HOVELSRUD ,et al., Appellants, v. AMUNSON, Respondent

(43 N. W.2d 746)

(File No. 9094. Opinion filed August 15, 1950)

**T. R. Johnson,** Sioux Falls, for Plaintiffs and Appellants.

**J. H. Lammers,** Madison, for Defendant and Respondent.

HAYES, P.J.   Plaintiff executors brought suit to obtain an adjudication respecting the ownership of some livestock and farm produce.   The property in question was cared for upon and harvested from farm lands owned by Henry E. Swanson at the time of his death in April, 1948.   These lands were for a period of years occupied by the decedent and one of his nephews, the defendant.   The latter asserts sole ownership of the chattels in dispute.   The judgment of the trial court sustains defendant's claim of ownership.

Parts of the decision below are as follows: "* * * and that he [defendant] agreed to pay his uncle, the said Henry E. Swanson, deceased, as rental for said real estate one-half of the sale of all surplus livestock, grain, and hay produced on said premises, and that such relationship continued to exist between the said Henry E. Swanson, deceased, and defendant, Henry O. Amunson, until the time of the death of the said Henry E. Swanson, and that shortly before the death of the said Henry E. Swanson, the defendant and the said Henry E. Swanson had and made an accounting and full settlement between them.

"That at the time of the death of the said Henry E. Swanson, there was no surplus livestock, grain or other produce on said premises owned by the decedent.

"* * * the said Henry E. Swanson maintained and insisted that he was not the owner of said livestock, grain or produce, and that he had no interest therein, and that the said Henry E. Swanson at no time claimed or asserted any interest in and to said livestock and other property hereinbefore described and also set out in the complaint of the plaintiff."   Plaintiff contends that the evidence is insufficient to support the decision.

The testimony of defendant and other witnesses establishes that for about ten years decedent and defendant carried on an arrangement or understanding whereunder they divided equally the net proceeds realized from farming and stock raising activities conducted for the most part by defendant upon the lands aforementioned. Crops raised on the farm were usually fed to the cattle and hogs. If crops were sold the proceeds were divided. If stock feed had to be purchased the cost of this feed was deducted from the sale price of livestock before the division of sale receipts. The livestock was assessed in defendant's name; defendant paid the taxes thereon, and the livestock was sold by defendant in his name only and he received the remittances on all sales. Once or twice a year the parties calculated their respective standings and adjusted accordingly. Their last settlement was made in January, 1948. Decedent had purchased no part of the livestock remaining on the farm at the time of his death. These related facts are not in dispute.

In explanation of the terms of their farming arrangement defendant in substance testified that he and his uncle operated on a 50/50 basis; that when surplus livestock or crops were sold they shared equally in the sale returns; that what was paid to the uncle was rent for defendant's joint use and occupation of the farm, and that if all of the livestock and farm produce then on hand had been sold just prior to the death of the uncle the latter would have received one half of the sum realized from such sale. Fair inferences from these and other factual details are that the uncle and nephew conducted their business affairs quite on a plane common to dealings of like character between father and son and that in the main their program of activities was aimed at raising and fattening cattle and hogs for market rather than raising crops for sale. A further deduction supporting the decision below is that what was to be regarded as "surplus" livestock, and then to be sold, was more of less a matter of mutual understanding between the parties, the decisions resting mainly with defendant. No doubt they looked upon livestock as "surplus" when the number and kind of cattle or hogs on hand from time to time exceeded what ought to be regarded as fair and sufficient

breeding stock in order to continue their plan of operations and when such surplus stock was ready for market and should be moved to sale.

Worthy of particular note is the absence of proof .that decedent at any time openly asserted a right of ownership, partial or otherwise, to the livestock or any of it. Significant also is the lack of any showing on plantiff's part that decedent at any time disapproved of defendant's assuming full control over the livestock and his marketing the same as sole owner. Altogether inconsistent with the theory that decedent held a partial interest in the property is the proof that he directed defendant to carry the same on the tax rolls as his own. The tax assessor testified that decedent stated to him that the personal property on the farm belonged to defendant. Also, if any of the livestock on the farm at the time of the death of Henry E. Swanson was of the character of "surplus" there is no proof of that fact. The proof is to the contrary. On hand at that time were 22 cows 17 or 18 calves, a bull and 35 to 40 brood sows.

We think the evidence supports the view that decedent recognized defendant as the owner of the property in dispute and that the former, under the loose and informal business arrangement between the parties, had the right only to share in the returns from livestock and crops sold. Deeming the evidence altogether sufficient to sustain the decision of the trial court the judgment appealed from is affirmed.

All the Judges concur.